UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**CLARENCE JOSEPH JASON #2512331**     **CASE NO. 3:21-CV-03405 SEC P**

**VERSUS**     **JUDGE TERRY A. DOUGHTY**

**JOHNNY HEDGEMON ET AL.**     **MAG. JUDGE KAYLA D. MCCLUSKY**

## REPORT & RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions to dismiss for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted [docs. #31, 70], filed by Defendant James M. LeBlanc, Secretary of the Louisiana Department of Corrections ("Secretary LeBlanc"). The motions are opposed. [docs. #38, 82]. For reasons set forth below, it is recommended that the motions to dismiss for lack of subject matter jurisdiction and failure to state a claim be GRANTED.

## Background

On September 21, 2021, Plaintiff, pro se, Clarence Joseph Jason ("Jason") filed the instant civil rights complaint under 42 U.S.C. § 1983 against Defendants Johnny Hedgemon, individually and in his official capacity as warden of Riverbend Detention Center (hereinafter, "Riverbend"); Robert Russell, individually and in his official capacity as assistant warden of Riverbend; Wydette Williams, individually and in his official capacity as Sheriff of East Carroll Parish; James LeBlanc, individually and in his official capacity as Secretary of the Louisiana Department of Corrections (hereinafter, "DOC"); and Carla Costello, individually and in her official capacity as nurse

practitioner (collectively, "Defendants").[1] Jason alleges that Defendants violated his Eighth and Fourteenth Amendment rights by depriving him of proper medical care. [doc. #55, p. 6]. Jason also alleges that Riverbend Detention Center has an inadequate medical department as it relates to the non-availability of a certified licensed psychologist or psychiatrist and the non-availability of a mental health department with certified licensed social workers. *Id.*

Jason alleges that he suffers from Post-Traumatic Stress Disorder ("PTSD"). *Id.* While a pre-trial detainee at Orleans Parish Justice Center, Jason was prescribed medication to treat PTSD. *Id.*

Around January 26, 2021, Jason was transferred to the Riverbend from the Orleans Parish Justice Center. *Id.* On February 5, 2021, Jason alleges that he received an initial medical assessment. *Id.* During the medical assessment, Jason claims that he told nurse practitioner Carla Costello ("Costello") about his PTSD and expressed his need to be treated by a psychologist or psychiatrist. *Id.* Jason claims that Costello told him there was no licensed psychologist or psychiatrist employed at Riverbend and that the facility has no mental health department. *Id.* at 8.

Jason claims that after his initial medical assessment, he made several requests to see a psychologist or psychiatrist—all of which were "ignored or disregarded." *Id.* He also made a grievance and "administrative remedy procedure" ("ARP") reiterating his request and seeking medical transfer to the "Louisiana Department of Corrections jail facility." *Id.*

Jason also claims that Riverbend officials "erased" and "deleted" his grievance requests and ARPs, without providing responses. *Id.* at 10. He also claims that his written requests went unanswered by prison officials and the DOC. *Id.*

---

[1] Carla Costello was originally named in the complaint as "Nurse Carter." [doc #1]. Jason amended his complaint on July 11, 2022, and correctly named Carla Costello. [doc #55]. "Nurse Carter" was subsequently terminated as a party.

On May 31, 2021, Jason alleges that he sent Secretary LeBlanc an administrative remedy grievance request letter. [doc. 1-2, p. 9]. Therein, Jason wrote that the non-availability of a mental health department at Riverbend was a serious deprivation of medical care and a violation of his constitutional rights. *Id.* at 10. He requested transfer to a Louisiana DOC facility to receive treatment for complications from PTSD and $200,000 in damages for mental anguish, pain and suffering, and anxiety. *Id.* at 13. Jason claims Secretary LeBlanc took no action in response to his letter. [doc. #56, p. 11].

On June 22, 2021, Jason alleges that he spoke with Assistant Warden Russell ("Russell") about his condition and his request to see a psychologist or psychiatrist. *Id.* According to Jason, Russell acknowledged that Riverbend did not have a mental health department but advised Jason that he would look into the situation. *Id.* Jason claims that Russell took further action. *Id.*

On July 20, 2021, Jason alleges that he "blacked-out" and fell onto a concrete floor, suffering a concussion and swelling of the face and eye. *Id.* at 11. Jason attributes the incident to complications from his PTSD medications. *Id.* After the incident, Jason claims he spoke with Warden Johnny Hedgemon ("Hedgemon") and reiterated his request for mental health treatment. *Id.* Hedgemon allegedly told Jason that he would arrange for the nurse practitioner to see him and would medically transfer Jason if the nurse practitioner ordered it. *Id.* Jason says he never met with the nurse practitioner. *Id.*

Subsequently, Jason filed another ARP reiterating his request for mental health care. *Id.* at 12. On July 26, 2021, Jason claims that he received a response from prison official Deshun Frost, stating that the grievance was unfounded because Jason needed to submit a sick call first. *Id.* Jason then filed an appeal and claimed that he had already made several sick call requests to

see a psychologist or psychiatrist. *Id.* On August 24, 2021, Jason alleges that his appeal was deleted without a response. *Id.*

Jason filed the instant action[2] on September 21, 2021, seeking monetary relief for deprivation of medical care; subjection to imprisonment in a facility with an inadequate medical department; pain and suffering; injuries sustained to his neurological system; mental injuries; extreme paranoia; mild schizophrenia; emotional distress; mental anguish; anxiety; and "any other harm sustained presently or in the future as diagnosed by certified licensed medical physician for Plaintiff's PTSD." [doc. #56, p. 13-14].

On January 21, 2022, Jason informed the Court that he was transferred from Riverbend to Orleans Justice Center. [doc. #16].

On April 22, 2022, Secretary LeBlanc filed a motion to dismiss for lack of jurisdiction and failure to state a claim upon which relief can be granted. [doc. #31]. On May 27, 2022, Jason filed his opposition. [doc. #38]. On June 7, 2022, LeBlanc filed his reply. [doc. #42]. On July 5, 2022, Jason filed a sur-reply. [doc #54]. On August 8, 2022, Jason filed a sur-sur-reply. [doc. #75].

On August 1, 2022, LeBlanc filed a second motion to dismiss for failure to state a claim upon which relief can be granted and lack of jurisdiction. [doc. #70]. On August 22, 2022, Jason filed his opposition. [doc. #82]. On September 6, 2022, LeBlanc filed his reply. [doc. #88].

Accordingly, this matter is ripe.

---

[2] On July 11, 2022, Jason filed his amended complaint [doc. #55] and his "amended" amended complaint (hereinafter, "AAC") [doc. #56].

4

## Analysis

A § 1983 suit may be brought against a party in its official or individual/personal capacity, as well as against a government entity. *Goodman v. Harris Cty.*, 571 F.3d 388, 395 (5th Cir. 2009). A § 1983 *personal-capacity* suit seeks to impose liability on a "government officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25, 112 S.Ct. 358 (1991) (emphasis added). On the other hand, a suit against a party in its *official-capacity* is generally "another way of pleading an action against an entity of which an officer is an agent." *Goodman*, 571 F.3d at 395 (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, n.55 (1978)). Therefore, an official-capacity suit is treated as a suit against the real party in interest—the government entity—and not against the official personally. *Id.*

Here, Secretary LeBlanc seeks to dismiss Jason's claims against him in both his "individual" and "official" capacities under 42 U.S.C. § 1983. The court will address the claims separately.

A. *Individual Capacity*

1. *Standard of Review*

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for relief, inter alia, when it contains a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2). Circumstances constituting fraud or mistake, however, must be alleged with particularity. FED. R. CIV. P. 9(b).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955

(2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility does not equate to possibility or probability; it lies somewhere in between. *See Iqbal*, *supra*. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965. Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. *Iqbal, supra*. A pleading comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8. *Id.* "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148 (5th Cir. 2010).

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *Gilbert v. Outback Steakhouse of Florida Inc.*, 295 Fed. App'x. 710, 713 (5th Cir. 2008) (citations and internal quotation marks omitted). Further, "a complaint need not pin plaintiff's claim for relief to a precise legal theory. Rule 8(a)(2) of the Federal Rules of Civil Procedure generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of [her] legal argument." *Skinner v. Switzer*, 562 U. S. 521, 131 S. Ct. 1289, 1296 (2011). Indeed, "[c]ourts must focus on the substance of the relief sought and the allegations pleaded, not on the label used." *Gearlds v. Entergy Servs., Inc.*, 709 F.3d 448, 452 (5th Cir. 2013) (citations omitted). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89 (2007) (quoting *Bell Atl.*, 127 S. Ct. at 1958).

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, supra. (citation omitted). A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, supra. Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and its proper attachments. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted). However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"—including public records. *Dorsey*, supra; *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007) (citation omitted) (proper to take judicial notice of matters of public record).

2. *Qualified Immunity*

In his motion to dismiss, Secretary LeBlanc raises qualified immunity. The doctrine of qualified immunity "adds a wrinkle" to § 1983 pleadings. *Arnold v. Williams*, 979 F.3d 262, 266-67 (5th Cir. 2020). "'A plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity.'" *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)). Thus, a plaintiff must plead qualified-immunity facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*. *Id.*

Notably, "qualified immunity is an immunity from suit, not merely a defense to liability." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021). Protection from pretrial discovery—and the significant time and costs associated therewith—is "among the chief benefits" of qualified

7

immunity. *Lopez v. Ramirez*, No. 21-40235, 2022 WL 3230442 at *2 (5th Cir. 2022) (per curiam). Thus, "a defendant's entitlement to qualified immunity should be determined at the earliest possible stage of the litigation. *Id.*

When, as here, a plaintiff seeks money damages from government officials in their individual capacities under § 1983, the affirmative defense of qualified immunity is available to protect defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982)). The qualified immunity doctrine balances two often conflicting interests: "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* As such, "[t]he protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Id.* (citations and internal quotation marks omitted).

In effect, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Mendenhall v. Riser*, 213 F.3d 226, 230 (5th Cir. 2000) (citing *Malley v. Briggs*, 475 U.S. 335, 343, 341, 106 S.Ct. 1092 (1986) (internal quotation marks omitted)).

Qualified immunity is nominally characterized as an affirmative defense. However, once raised by defendants, it devolves upon the plaintiff to negate the defense by showing that the officials' conduct violated clearly established law. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008) (citation omitted). Plaintiff's burden is two-pronged. *Club Retro LLC v. Hilton*, 568

F.3d 181, 194 (5th Cir. 2009) (quoted sources omitted). First, a plaintiff must demonstrate that defendant(s) violated a constitutional right under current law. *Id.* "Second, [plaintiff] must claim that the defendant[s'] actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* (quoted source and internal quotation marks omitted). The courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the particular case at hand." *Collier v. Montgomery*, 569 F.3d 214, 217 (5th Cir. 2009) (citation omitted).

In exercising that discretion, the Court will first consider whether Jason sufficiently pleads that Secretary LeBlanc violated a constitutional right. In his complaint, Jason alleges that he was "depriv[ed] of proper and adequate medical care" in violation of his Eighth and Fourteenth Amendment rights. [doc. #56, p. 2]. In his sur-reply, Jason also appears to argue that the conditions of his confinement violated the Eighth Amendment. [doc. #54, p. 6].

Jason alleges that Secretary LeBlanc housed him at Riverbend knowing that the facility lacked a mental health department or a psychologist or psychiatrist. [doc. #56, p. 9-10]. Because Secretary LeBlanc allegedly knew that Riverbend lacked mental health professionals, Jason claims that Secretary LeBlanc also knew that housing prisoners with mental health conditions at Riverbend would "deprive [them] of adequate care as constitutionally entitled." *Id.*

Jason also alleges that he "directly notified [Secretary LeBlanc] of his [PTSD] and his medical concerns surrounding the deprival of proper and adequate medical care . . ." *Id.* at 10. In his letter[3] to Secretary LeBlanc, Jason states the following:

> I partake this opportunity to personally forward a copy of my complaint and pray[] that it is received by your office. Moreover, as this matter concerns the non-availability and/or total absence of a Mental Health Department with certified licensed psychiatrist staffing at Riverbend Detention Center. [sic]. A serious deprivation of medical care is not only demonstrated but also apparent and obvious. Based upon the fact that this serious medical care deficiency cannot be accepted by the placement into custody at jail facilities lacking proper or adequate medical department [sic] to meet the need of prisoners committed to the La. Dept. of Correction [sic]. I request to be transferred to prison facility [sic] that is an entity of and under the jurisdiction of the La. Dept. of Correction in order to receive proper and adequate medical care in relation to my [PTSD] by [a psychiatrist] in resolution of [grievances and administrative complaints].

[doc. #1-2. p. 10].

Jason also alleges that he provided Secretary LeBlanc with a copy of a written grievance request that he filed at Riverbend, seeking treatment for PTSD complications. *Id.* at 9. The grievance request states in part:

> Upon initial medical-assessment and evaluation [at Riverbend] by nurse staff and nurse practitioner, [Jason] informed some of his medical conditions [sic] [PTSD] and the need for medical attendance by [a psychiatrist]. Both the nurse staff and nurse practitioner stated to Jason [sic] that 'there is no mental health department at [Riverbend] nor physician and the [DOC] should not have sent you here.' [Jason's] medical ailment is well documented in medical files and records at [Orleans Parish Justice Center] where [Jason] was not only prescribed medicine for his [PTSD], but was also being seen by [a psychiatrist]. Because [Jason] is experiencing complications with his [PTSD] and there is not a [psychiatrist] to meet the medical need of [Jason] by both counseling or making proper diagnostic assessment and prescribing proper medication. [Jason] is being deprived of adequate medical assistance in violation of his Eighth Amendment . . . .

---

[3] Jason attached to his complaint a copy of what he alleges is the letter he sent to Secretary LeBlanc on May 31, 2021, to notify him that he was being deprived of medical care at Riverbend. [doc. 1-2]. At this stage of the litigation, the Court must assume all of Jason's factual allegations are true, including that Jason sent the letter and that the attached is a copy of the letter that he sent.

*Id.* at 11-12.

In his motion to dismiss, Secretary LeBlanc argues that Jason does not plausibly allege that he acted with deliberate indifference. [doc. #70-2, p. 6-7]. Because he was not acting as Jason's healthcare provider or as a prison official at Riverbend, Secretary LeBlanc argues that he cannot be held responsible for any denial of medical care. *Id.* at 6. Secretary LeBlanc also argues that he is not involved in the administration of Riverbend, and so he is not responsible for responding to complaints lodged by inmates housed there. *Id.* at 7.

In response, Jason argues that Secretary LeBlanc, having served as Secretary of the Louisiana DOC for over two decades, should have known that prisoners are protected from prison officials' deliberate indifference to inmates' serious medical needs. [doc. #38-1, p. 10]. Jason also argues that Secretary LeBlanc's duty to provide adequate mental health care to prisoners who are committed to the DOC is non-delegable. *Id.* at 12-13. Finally, Jason argues that Secretary LeBlanc had subjective knowledge that he was being deprived of adequate mental health care because he sent his office an "administrative remedy" explaining such. *Id.*

In reply, Secretary LeBlanc argues that Jason's allegations are insufficient to establish that an inference of excessive risk to Jason's health or safety could be drawn, or that Secretary LeBlanc drew such an inference. [doc. #87, p. 2]. Secretary LeBlanc also argues that Jason's health is not at serious risk because mental health professionals can periodically provide care by visiting Riverbend. *Id.*

In his sur-reply and sur-sur reply, Jason appears to claim that the conditions of his confinement violate his Eighth Amendment right against cruel and unusual punishment. [docs. #54, p. 6-8; #75, p. 6-8]. Therein, Jason argues that there are "systematic and gross deficiencies in mental health care" at Riverbend. *Id.* at 7. Jason argues that the "initial intake screening" is

11

conducted by a practitioner nurse who is "medically unqualified to conduct psychiatrist mental examinations." *Id.* at 8. He also claims that the nurse failed to document his mental health disability and prescribed medications. *Id.* Jason also argues that nurse practitioner Costello failed to issue an outside-medical referral for him to be examined by a psychiatrist. *Id.* at 9. Jason claims that these instances, along with the alleged unanswered sick-call requests, show that there are "systemic and gross deficiencies" at Riverbend that violate his Eighth Amendment rights. *Id.*

While it is true that an inmate has no constitutional right to the best medical treatment or the treatment that he prefers,[4] the Supreme Court has held that the Eighth Amendment requires that "inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). A pre-trial detainee is entitled to that same right under the Fourteenth Amendment.[5] *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200 (1989); *Estate of Henson v. Wichita County, Texas*, 795 F.3d 456, 462 (5th Cir. 2015).

A pre-trial detainee bringing a Fourteenth Amendment claim for deprivation of adequate medical care must show that appropriate care was denied, and that the denial constituted deliberate indifference to serious medical needs. *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 643-45 (5th Cir. 1996) (adopting the same "deliberate indifference" standard applied in eighth amendment claims involving inmates asserting deprival of adequate medical care); *Thomas v. Carter*, 593 Fed. App'x 338, 342 (5th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

---

[4] *See e.g.*, *Baughman v. Garcia*, 254 F. Supp. 3d 848, 877-88 (S.D. Tex. May 26, 2017) (noting that it is "well established" that an inmate has no right to the treatment he prefers or the best treatment available).

[5] It is unclear whether Jason was a convicted inmate, a pre-trial detainee, or both at the time of the alleged deprival of medical care. Regardless, the standard to assess deprivation of adequate medical care is the same under the Eighth and Fourteenth Amendments.

Deliberate indifference is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. He must both "know that [the inmate] faces a substantial risk of serious bodily harm" and "disregard that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

In addition, for a supervisory official to be liable under § 1983, the official must "be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be some causal connection between the actions of the official and the constitutional violation sought to be addressed." *Kyles v. LeBlanc*, No. 16-0399-SDD-EWD, 2017 WL 4080474 at *4 (M.D. La. Aug. 10, 2017) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). Allegations that an official is responsible for the actions of subordinate officers or co-employees under a theory of vicarious liability or *respondeat superior* is alone insufficient to state a claim under § 1983. *Id.* (citing *Ashcroft*, 556 U.S. at 676; *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Bell v. Livingston*, 356 Fed. App'x 715, 716-17 (5th Cir. 2009)).

Applying the foregoing, the undersigned finds that Jason has not pled facts to plausibly allege deliberate indifference by Secretary LeBlanc. Jason does not allege facts sufficient to show that Secretary LeBlanc knew that he faced a substantial risk of serious bodily harm. Jason asserts that Secretary LeBlanc knew that Riverbend lacked a mental health department and, therefore, knew that prisoners housed there would be deprived of adequate care. [doc. #56, p. 10]. Jason's Complaint also alleges that he sent Secretary LeBlanc's office a letter stating that he was not receiving adequate medical care at Riverbend. However, in the letter Jason makes no specific

13

factual statements about his medical condition. Jason says that he is "experiencing complications with his PTSD ailment" and requests $200,000 for "mental anguish, pain and suffering, [and] anxiety. . . ." [doc. #1-2, p. 8, 12].

Even assuming, as the Court must, that Jason's allegations are true, his statements are not sufficient to put Secretary LeBlanc on notice as to an excessive risk to Jason's safety.[6] While Jason does plausibly allege that Secretary LeBlanc failed to respond to his administrative remedy procedure, he does not plausibly allege that Secretary LeBlanc "ignore[d] an excessive risk to [his] health or safety." *Smith v. Leflore County, Miss.*, No. 4:14cv127-NBB-JMV, 2015 WL 5655830 at *5 (N.D. Miss. Sept. 24, 2015) (quoting *Farmer*, 511 U.S. at 837).

And, even if the letter did notify Secretary LeBlanc as to an excessive risk to his safety, Jason does not allege in his complaint that Secretary LeBlanc was personally involved in examining, evaluating, or treating his medical condition, or that Secretary LeBlanc has any qualifications to treat him. *See Cox v. Irby*, 281 Fed. App'x 390, 391 (5th Cir. 2008) ("[Plaintiff] may have put [the Warden] on notice that his needs for medication and a wheelchair were not being met, but he did not show that the warden was personally involved in his medical care or that there was a causal connection between her conduct and the alleged harm.").

---

[6] *Cf. Estate of Cheney ex rel. Cheney v. Collier*, 560 Fed. App'x 271, 274-75 (5th Cir. 2014) (holding that a nurse's knowledge and inattention to symptoms consistent with flu did not rise to the level of an "obvious" or apparent risk to plaintiff's health to infer that the nurse acted with deliberate indifference). If a healthcare professional's actual knowledge of symptoms and subsequent inattention to those symptoms does not rise to the level of obvious risk to an inmate's health, then, *a fortiori* Secretary LeBlanc's alleged knowledge—as Secretary of the DOC, not a medical provider—that an inmate was "experiencing complications with his PTSD ailment" certainly would not rise to the level of obvious risk to support a finding that he acted with deliberate indifference in failing to respond. *See also Wesley v. LeBlanc*, No. 1:20-cv-00243, 2021 WL 1219982 at *4 (W.D. La. March 15, 2021) (finding that plaintiff's assertion that he sent Secretary LeBlanc written complaints informing him of exposure to environmental tobacco smoke was insufficient to establish Secretary LeBlanc's deliberate indifference or personal involvement in the alleged constitutional violation).

In his sur-reply, Jason appears to argue that the conditions at Riverbend violate his Eighth Amendment protection from cruel and unusual punishment. "To be tantamount to the infliction of cruel and unusual punishment, prison conditions must pose 'an unreasonable risk of serious damage' to a prisoner's health—an objective test—and prison officials must have acted with deliberate indifference to the risk posed—a subjective test.'" *Dockery v. Cain*, 7 F.4th 375, 378 (5th Cir. 2021) (quoting *Ball v. LeBlanc*, 792 F.3d 584, 592 (5th Cir. 2015)).

As discussed, Jason does not plead facts to sufficiently establish Secretary LeBlanc's deliberate indifference. The crux of Jason's arguments regarding systemic and gross deficiencies in mental health care at Riverbend center around the alleged negligence of nurses who treated him. In the context of his cruel and unusual punishment claim, the only allegation Jason makes towards Secretary LeBlanc is that he committed prisoners to Riverbend knowing that the facility lacked dedicated mental health personnel. Once again, even accepted as true, that allegation fails to plausibly allege that Secretary LeBlanc was deliberately indifferent to an excessive risk to Jason's health.

As Jason has not sufficiently pled facts to plausibly allege that Secretary LeBlanc violated a constitutional right, the Court need not reach the issue of whether each right was clearly established.

Accordingly, having accepted all factual pleadings as true, the undersigned finds that Jason did not allege specific facts that allow the Court to reasonably infer that Secretary LeBlanc is liable for the alleged harm. Thus, Secretary LeBlanc is entitled to qualified immunity, and the Court should dismiss Jason's claims against him in his personal capacity.

B. *Official Capacity*

1. *Standard of Review*

A party's invocation of Eleventh Amendment immunity is analyzed as a challenge to the federal court's exercise of federal subject matter jurisdiction. *Mahogany v. Louisiana State Supreme Court*, 262 Fed. App'x. 636 (5th Cir. 2008) (citations omitted); *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. Nov. 18, 2021) ("Sovereign immunity is indeed a jurisdictional bar.").

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted).

"A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir. 2016) (citations and internal quotation marks omitted).

2. *Analysis*

It is manifest that official capacity suits, "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing *Monell*, 436 U.S. at 690). Thus, "an official-capacity suit is, in all

respects other than name, to be treated as a suit against the entity." *Id*. Consequently, the Eleventh Amendment bars suit against state officials and employees of state entities, acting in their official capacities. *K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010) (citations omitted); *Green v. State Bar of Texas*, 27 F.3d 1083, 1087-88 (5th Cir. 1994) (plaintiff cannot evade Eleventh Amendment by suing state employees in their official capacity); *Brown v. McLane*, 807 Fed. App'x. 410, 411 (5th Cir. 2020) (Eleventh Amendment bars federal constitutional claims for damages *and* state-law claims, regardless of the form of relief sought against state agency head, in her official capacity) (citation omitted).

Secretary LeBlanc argues that the Eleventh Amendment bars Jason's suit against him in his official capacity. [doc. #70, p. 4-5]. In his opposition, Jason agrees that his claims against Secretary LeBlanc in his official capacity are barred and should be dismissed. [doc. #38, p. 6-7]. Accordingly, it is recommended that Jason's claims against Secretary LeBlanc in his official capacity be dismissed.

C. *Injunctive Relief*

As part of his initial complaint, Jason requested that the Court transfer him to a Louisiana DOC facility and bar future confinement at Riverbend. [doc. #1, p. 13]. On January 21, 2022, Jason informed the Court that he was transferred from Riverbend to Orleans Justice Center. [doc. #16]. Accordingly, Jason's request should be **DENIED as MOOT.**

## Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant James M. LeBlanc's motions to dismiss for lack of subject matter jurisdiction and failure to state a claim be **GRANTED**, and that Jason's claims against him in both his individual and official capacities be **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER RECOMMENDED** that Jason's request that he be transferred to another facility be **DENIED AS MOOT.**

17

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14)** days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 26th day of September, 2022.

KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE