**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

**CLARENCE JOSEPH JASON #2512331**    **CASE NO.  3:21-CV-03405 SEC P**

**VERSUS**    **JUDGE TERRY A. DOUGHTY**

**JOHNNY HEDGEMON ET AL.**    **MAG. JUDGE KAYLA D. MCCLUSKY**

<u>**REPORT & RECOMMENDATION**</u>

Before the undersigned Magistrate Judge, on reference from the District Court, are two motions: (1) a motion for summary judgment [doc. #107], filed by Defendant Carla Costello; and (2) a motion for summary judgment [doc. #136], filed by Defendants Johnny Hedgemon, Robert Russell, and Wydette Williams.  For reasons set forth below, it is recommended that both motions be GRANTED and that all of Plaintiff's claims be DISMISSED WITH PREJUDICE.

<u>**Background**</u>

On September 21, 2021, Plaintiff pro se Clarence Joseph Jason ("Jason") filed the instant civil rights complaint under 42 U.S.C. § 1983 against Defendants Johnny Hedgemon, individually and in his official capacity as warden of Riverbend Detention Center (hereinafter, "Riverbend"); Robert Russell, individually and in his official capacity as assistant warden of Riverbend; Wydette Williams, individually and in his official capacity as Sheriff of East Carroll Parish; James LeBlanc, individually and in his official capacity as Secretary of the Louisiana Department of Corrections (hereinafter, "DOC"); and Carla Costello, individually and in her official capacity as nurse

practitioner.[1]  Jason alleges that Defendants violated his Eighth and Fourteenth Amendment rights by depriving him of proper medical care.  [doc. #55, p. 6].

Jason alleges that he suffers from Post-Traumatic Stress Disorder ("PTSD").  *Id.*  While a pre-trial detainee at Orleans Parish Justice Center, Jason was prescribed medication to treat PTSD.  *Id.*

Around January 26, 2021, Jason was transferred to Riverbend from the Orleans Parish Justice Center.  *Id.*  On February 5, 2021, Jason alleges that he received an initial medical assessment.[2]  *Id.*  During the medical assessment, Jason claims that he told nurse practitioner Carla Costello ("Costello") about his PTSD and expressed his need to be treated by a psychologist or psychiatrist.  *Id.*  Jason claims that Costello told him there was no licensed psychologist or psychiatrist employed at Riverbend and that the facility has no mental health department.  *Id.* at 8.

Jason claims that, after his initial medical assessment, he made several requests to see a psychologist or psychiatrist—all of which were "ignored or disregarded."  *Id.*  He also made a grievance and "administrative remedy procedure" ("ARP") reiterating his request and seeking medical transfer to the "Louisiana Department of Corrections jail facility."  *Id.*

Jason also claims that Riverbend officials "erased" and "deleted" his grievance requests and ARPs, without providing responses.  *Id.* at 10.  He also claims that his written requests went unanswered by prison officials and the DOC.  *Id.*

---

[1] Carla Costello was originally named in the complaint as "Nurse Carter."  [doc #1].  Jason amended his complaint on July 11, 2022, and correctly named Carla Costello.  [doc #55].  "Nurse Carter" was subsequently terminated as a party.

[2] Jason's medical records indicate that he underwent an initial medical assessment on January 26, 2021.  [doc. #26-2, pp. 4–5].  On February 1, 2021, Costello conducted a tele-medicine examination.  [doc. #26-2, p. 1].

On June 22, 2021, Jason alleges that he spoke with Assistant Warden Russell ("Russell") about his condition and his request to see a psychologist or psychiatrist. *Id.* According to Jason, Russell acknowledged that Riverbend did not have a mental health department but advised Jason that he would look into the situation. *Id.* Jason claims that Russell took no further action. *Id.*

On July 20, 2021, Jason alleges that he "blacked-out" and fell onto a concrete floor, suffering a concussion and swelling of the face and eye. *Id.* at 11. Jason attributes the incident to complications from his PTSD medications. *Id.* After the incident, Jason claims he spoke with Warden Johnny Hedgemon ("Hedgemon") and reiterated his request for mental health treatment. *Id.* Hedgemon allegedly told Jason that he would arrange for the nurse practitioner to see him and would medically transfer Jason if the nurse practitioner ordered it. *Id.* Jason says he never met with the nurse practitioner. *Id.*

Subsequently, Jason filed another ARP reiterating his request for mental health care. *Id.* at 12. On July 26, 2021, Jason claims that he received a response from prison official Deshun Frost, stating that the grievance was unfounded because Jason needed to submit a sick call first. *Id.* Jason then filed an appeal and claimed that he had already made several sick call requests to see a psychologist or psychiatrist. *Id.* On August 24, 2021, Jason alleges that his appeal was deleted without a response. *Id.*

Jason filed the instant action[3] on September 21, 2021, seeking monetary relief for deprivation of medical care; subjection to imprisonment in a facility with an inadequate medical department; pain and suffering; injuries sustained to his neurological system; mental injuries; extreme paranoia; mild schizophrenia; emotional distress; mental anguish; anxiety; and "any other

---

[3] On July 11, 2022, Jason filed his amended complaint [doc. #55] and his "amended" amended complaint (hereinafter, "AAC") [doc. #56].

harm sustained presently or in the future as diagnosed by certified licensed medical physician for Plaintiff's PTSD."  [doc. #56, p. 13-14].

On September 26, 2022, the undersigned recommended that Jason's claims against Secretary LeBlanc be dismissed with prejudice.  [doc. #97].  On October 17, 2022, Judge Doughty adopted the undersigned's recommendations.  [doc. #102].

On October 25, 2022, Defendant Costello filed her motion for summary judgment. [doc. #107].  Therein, she argues that there are no genuine issues of material fact, and she is entitled to judgment as a matter of law.  [doc. #107-1].  According to Costello, her actions providing medical care to Jason do not show deliberate indifference.  *Id.* at 3.  Costello also argues that any potential state law medical negligence claim is premature because he failed to exhaust the administrative remedy by convening a medical review panel, as is required by Louisiana law.  *Id.* at 3–4.

On January 10, 2023, Jason filed his opposition.  [doc. #143].  Therein, he argues that there are genuine issues of material fact as to whether he was incarcerated under conditions posing a serious risk to his health or safety due to Riverbend's alleged inadequate medical department.  *Id.* at 11–12.

On January 4, 2023, Costello filed her reply.  [doc. #141].  Therein, Costello argues that Jason fails to provide any evidence that she was deliberately indifferent to his serious medical needs. *Id.* at 1.

On February 13, 2023, Jason filed his sur-reply.  [doc. #147].  Therein, he argues that the fact that Costello prescribed psychiatric mediation does not resolve the inquiry surrounding his Eighth Amendment claim.  *Id.* at 2–3.  Jason also appears to argue that Costello provided

insufficient evidence to support her argument that she recommended Jason's transfer to another prison facility for the purpose of receiving psychiatric care. *Id.* at 3.

On December 16, 2022, Defendants Hedgemon; Russell; and Williams (collectively, the "Law Enforcement Defendants") filed their motion for summary judgment. [doc. #136]. Therein, they argue that they were not on notice as to an excessive risk to Jason's safety and, therefore, were not deliberately indifferent to Jason's medical needs in violation of the Eighth Amendment. *Id.* at 4–6.

It appears that Jason's opposition to Costello's motion for summary judgment [doc. #143] also functions as his opposition to the Law Enforcement Defendants' motion for summary judgment. The Court construes it as such.

Accordingly, this matter is ripe.

## **Discussion**

### *I.      Standard of Review*

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact by pointing out that

the record contains no support for the non-moving party's claim. *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002) (quoting Fed. R. Civ. P. 56(c)). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.* "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).[4]

In evaluating a motion for summary judgment, courts "may not make credibility determinations or weigh the evidence" and "must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Total E & P USA Inc. v. Kerr-McGee Oil & Gas Corp.*, 719 F.3d 424, 434 (5th Cir. 2013). While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). To rebut a properly supported motion for summary judgment, the opposing party must show, with "significant probative evidence," that a genuine issue of material fact exists. *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "'If the evidence is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Tech. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).

II.     *Costello's Motion for Summary Judgment*

Jason asserts two claims against Costello. First, that she deprived him of proper and adequate medical care in violation of his Eighth Amendment rights. [doc. #56, p. 5]. Second, that she violated his right to "humane conditions of confinement." *Id.* The Court will address each claim.

---

[4] However, Rule 56 does not require the Court to "sift through the record in search of evidence to support a party's opposition to summary judgment." *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

*a.  Medical Care Claim*

While an inmate has no constitutional right to the best medical treatment or the treatment that he prefers,[5] the Supreme Court has held that the Eighth Amendment requires that "inmates receive adequate . . . medical care." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994).  To prevail on a medical care claim, plaintiffs must establish that the deprivation of appropriate medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  Importantly, "a serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills." *Partridge v. Two Unknown Police Officers of City of Houston, Tex.*, 791 F.2d 1182, 1187 (5th Cir. 1986).

Deliberate indifference is "an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006).  An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837.  He must both "know that [the inmate] faces a substantial risk of serious bodily harm" and "disregard that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

Thus, a showing of deliberate indifference "requires the prisoner to submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  *Grogan v. Kumar*, 873 F.3d 273, 278 (5th Cir. 2017) (quoting *Domino v. Tex. Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  "Mere negligence does not

---

[5] *See e.g.*, *Baughman v. Garcia*, 254 F. Supp. 3d 848, 877-88 (S.D. Tex. May 26, 2017) (noting that it is "well established" that an inmate has no right to the treatment he prefers or the best treatment available).

constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent extraordinary circumstances. *Id.* (quoting *Gobert*, 463 F.3d at 346) (internal quotation marks omitted). In fact, "allegations of unsuccessful medical treatment, negligence, neglect, medical malpractice, or a mistaken judgment do not amount to deliberate indifference to serious medical needs." *Young v. McCain*, 760 F. App'x 251, 256 (5th Cir. 2019) (internal citation omitted).

Costello argues that she was not deliberately indifferent to Jason's medical needs. [doc. #107-1, p. 4]. In short, Costello claims that she prescribed medicine to treat Jason's PTSD and recommended his transfer to a prison facility with mental health services. *Id.* at 7–8. As such, Costello maintains that she "provided all care to Mr. Jason that she was able to provide." *Id.*

Jason disagrees. He argues that Costello failed to ensure that he received necessary psychiatric medical care; namely, that she did not inform prison officials of his need for transfer to a facility providing psychiatric care. [doc. #147, pp. 2–5]. At a minimum, Jason argues that there is a fact issue as to whether Costello recommended his transfer to another facility, and, therefore, she is not entitled to summary judgment. *Id.* at 3.

As an initial matter, Jason does not contest that Costello provided him with medical care. According to Jason's medical records and Costello's affidavit, Costello evaluated Jason via tele-medicine on February 1, 2021, after his transfer to Riverbend. [doc. #26-2, p. 1; Exh. A, pp. 1–2]. At that time, Costello diagnosed Jason with hypertension and PTSD based on his past medical history. [Exh. A, p. 2.] She prescribed him Clonidine, Remeron, Paxil, and Ibprofen 600 mg, all consistent with the treatment Jason received at Orleans Parish Justice Center. *Id.*

Rather, Jason contends that Costello had the "power and authority" to medically transfer him to a facility with psychiatric services, but deliberately chose not to do so, despite knowing his

medical history of PTSD.  [doc. #56, pp. 4–5].  Jason also contends that Costello failed to make a "medical referral" for him to receive care from an outside psychiatric specialist.  *Id.*

However, in Louisiana, "any individual subject to confinement in a state adult penal or correctional institution shall be committed to the Department of Public Safety and Corrections and not to any particular institution within the jurisdiction of the department.  The secretary of the department may transfer an inmate from one such facility to another, insofar as the transfer is consistent with the commitment and in accordance with treatment, training, and security needs established by the department."  La. Rev. Stat. §15:824(A).

Therefore, as Jason's placement lies solely in the purview of the D.O.C., Costello lacked the "power and authority" to order his transfer to a different facility.  And, even if Costello had transfer authority, Jason has no federal constitutional right to be transferred to, or confined in, a place of his choosing.

Furthermore, even if his contentions are true, Jason fails to establish that Costello acted with wanton disregard to his serious medical needs.  *See Thomas v. Carter*, 593 F. App'x 338, 344 (5th Cir. 2014) (no genuine fact issue as to deliberate indifference where Nurse failed to schedule a medical appointment); *see also Carrothers v. Kelly*, 312 F. App'x 600, 602–03 (5th Cir. 2009) (no deliberate indifference where doctor did not follow through on plan to refer stab wound victim to neurosurgeon, absent evidence the doctor failed to do so intentionally); *Stewart v. Murphy*, 174 F.3d 530, 634–37 (5th Cir. 1999) (no deliberate indifference where doctors did not believe plaintiff's condition serious enough to warrant medical transfer).

Moreover, Jason does not point to any summary judgment evidence that Costello knew of and disregarded an excessive risk to his health and safety.[6]  Costello, on the other hand, points to summary judgment evidence that she provided Jason with treatment.  *See* Exh. A; doc. #26. Costello testifies that during her tele-medicine examination of Jason, he related a past medical history of hypertension and PTSD.  Exh. A, p. 2.  He also stated his need for counseling relating to a swing blade attack in 2014, and his need for continued psychiatric care.  *Id.*  Jason noted he had a pending lawsuit against the DOC and asked Costello to document that he felt he needed continued psychiatric care.  *Id.*   Costello examined Jason and concluded that continued treatment for hypertension and PTSD was appropriate.  *Id.*  She prescribed Clonidine 0.1 mg (used to treat high blood pressure); Remeron 45 mg (used to treat depression); Paxil 40 mg (used to treat depression); and Ibuprogen 600 mg (an anti-inflammatory).  [doc. #127, p. 3].     Finally, she documented Jason's request for medical transfer. Exh. A, p. 2.    Jason fails to controvert this evidence.[7]

Consequently, the undersigned finds that Jason's allegations amount only to his disagreement with Costello's course of treatment.  On Jason's facts, he believed that medical transfer and referral was the appropriate course of treatment for his PTSD, and Costello provided continued treatment with prescription medication was the appropriate course of treatment for his PTSD.  Disagreement over treatment, however, does not give rise to a constitutional claim.  *Young*,

---

[6] Jason cites to Warden Hedgmeon's declaration as evidence that Costello did not recommend Jason's transfer to another facility.  [doc. #147, pp. 3–4].  However, as discussed above, even if Costello did not recommend Jason's transfer, that would not rise to deliberate indifference.  Thus, Jason does not raise a genuine issue of material fact.

[7] Jason attached his sworn declaration to his sur reply.  [doc. #143-1, pp. 1–8].  Therein, he states that Costello "ignored and disregarded" his request for transfer.  *Id.* at 3.  As discussed above, viewing all evidence in the light most favorable to Jason, even if Costello disregarded his transfer request, her conduct did not rise to the level of deliberate indifference.

760 F. App'x at 257 (Disagreement with a diagnostic measure "does not state a claim for Eighth Amendment indifference to medical needs."); *Whiting v. Kelly*, 255 F. App'x 896, 899 (5th Cir. 2007) ("Although [plaintiffs] clearly believe that they should undergo additional testing and drug therapies, such disagreement does not give rise to a constitutional claim.").

Costello has established that she did not deny Jason medical treatment in violation of his Eighth Amendment rights. Therefore, there is no genuine issue of material fact and Costello is entitled to summary judgment. Accordingly, this claim should be dismissed with prejudice.

> b.  *Conditions of Confinement Claim*

The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832. "The Constitution requires that inmates receive adequate food, clothing, shelter, medical care, and mental health care, and that detention facilities 'take reasonable measures to ensure the safety of the inmates.'" *Jones v. Gusman*, 296 F.R.D. 416, 430–31 (E.D. La. June 6, 2013) (quoting *Gates v. Cook*, 376 F.3d 323, 332 (5th Cir. 2004)).

There is substantial overlap between this claim and Jason's medical care claim; an Eighth Amendment claim based on the conditions of an inmate's confinement requires a plaintiff to show conditions that "pos[e] a substantial risk of serious harm" and that "defendant prison officials were deliberately indifferent to the inmate's health or safety." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015) (quoting *Farmer*, 511 U.S. at 834) (internal quotation marks omitted). Given that a conditions of confinement claim requires a showing of deliberate indifference, and the Court has already found that Costello was not deliberately indifferent to Jason's health or safety, Costello

11

is also entitled to summary judgment on Jason's conditions of confinement claim.[8]  As such, this claim should also be dismissed with prejudice.[9]

III.     *Law Enforcement Defendants' Motion for Summary Judgment*

Jason asserts deprivation of medical care claims and conditions of confinement claims against each of the Law Enforcement Defendants.  The Court will address each claim.

a.  *Medical Care Claims*

The standard for a medical care claim is provided above; in short, to prevail on a medical care claim, plaintiffs must establish that the deprivation of appropriate medical care was "sufficiently harmful to evidence deliberate indifference to serious medical needs."  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).  An official is deliberately indifferent when he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.  He must both "know that [the inmate] faces a substantial risk of serious bodily harm" and "disregard that risk by failing to take reasonable measures to abate it." *Gobert*, 463 F.3d at 346 (quoting *Farmer*, 511 U.S. at 847).

---

[8] Costello raises qualified immunity as an alternative defense.  [doc. #107-1, p. 8].  However, as Costello is entitled to summary judgment on the merits of Jason's medical care and conditions of confinement claims, the Court need not reach qualified immunity.  *See Shepard v. Cleveland Sch. Dist.*, No. 4:17-cv-91-DMB-JMV, 2019 WL 4784612, at *11 (N.D. Miss. Sept. 30, 2019) (qualified immunity defense is moot where court grants summary judgment due to plaintiff's failure to establish defendants' liability under Section 1983).

[9] Costello's motion for summary judgment addresses state law medical malpractice claims "out of an abundance of caution."  Upon review of Jason's complaint, he does not allege state law medical malpractice claims.  The undersigned would note that Jason's Section 1983 claims are not subject to the Louisiana Medical Malpractice Act's requirements that claims be presented to a medical review panel before the filing of suit.  *See Zavala v. City of Baton Rouge/Parish of East Baton Rouge*, Civ. No. 17-656, 2018 WL 4517461, at *14 (M.D. La. Sept. 20, 2018).

Additionally, for a supervisory official to be liable under § 1983, the official must "be shown to have been personally and directly involved in conduct causing an alleged deprivation of an inmate's constitutional rights, or there must be some causal connection between the actions of the official and the constitutional violation sought to be addressed." *Kyles v. LeBlanc*, No. 16-0399-SDD-EWD, 2017 WL 4080474 at *4 (M.D. La. Aug. 10, 2017) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th Cir. 1983)). Allegations that an official is responsible for the actions of subordinate officers or co-employees under a theory of vicarious liability or *respondeat superior* is alone insufficient to state a claim under § 1983. *Id.* (citing *Ashcroft*, 556 U.S. at 676; *Monnell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *Bell v. Livingston*, 356 Fed. App'x 715, 716-17 (5th Cir. 2009)).

### 1. Warden Hedgemon

Jason alleges that Hedgemon was deliberately indifferent. [doc. #56, pp. 6–7]. In his amended complaint, Jason alleges that Hedgemon ignored and disregarded his requests for adequate medical care—specifically, Jason alleges that he made numerous grievance requests concerning his need to see a psychologist and receive mental health counseling. *Id.* Jason also alleges that he spoke directly with Hedgemon on July 20, 2021, about his need for treatment. Jason alleges that Hedgemon took no action following their meeting and ignored subsequent grievance requests. *Id.*

Hedgemon argues that Jason did not place him on notice of an excessive risk to his safety. [doc. #136-2, pp. 4–5]. In his motion for summary judgment, Hedgemon argues that even if Jason's allegations are true, he cannot reach the threshold of deliberate indifference because he did not communicate with any specificity what PTSD "complications" he was experiencing. *Id.*

The undersigned agrees with Hedgemon.  Jason's summary judgment evidence is not sufficient to raise a genuine issue of material fact as to whether Hedgemon was deliberately indifferent.  In his affidavit, Jason states: "[I] explained [to Hedgemon] that I was not receiving psychiatric care for my PTSD mental illness and explained that I was experiencing complications with my PTSD illness as well as side-effect [sic] from psychotropic medications. I further requested a medical transfer to a DOC prison facility in order to receive psychiatric care." [doc. #143-1, pp. 5–6].  Later, however, Jason seems to acknowledge that he *did* receive psychiatric care; he admits that he stopped taking his prescribed medications[10] following July 20, 2021.  *Id.* at 7.

Moreover, in Jason's response to the Law Enforcement Defendants' statement of uncontested material fact [doc. #143-2, pp. 4–5], Jason admits that Riverbend staff provided him with his PTSD medications for the entirety of his time there.  *Id.*  Jason marked "Admit" on the Law Enforcement Defendants' statement that "Plaintiff had been provided his PTSD medications up until that point [when he allegedly blacked out on July 20, 2021] and he continued his prescribed PTSD medications until he left the facility." [doc. #136-1, p. 3].  There is some evidence, however, that Jason may not have received his medication for a short period; Hedgemon states in his affidavit that Jason's medications were "possibly" denied him for "a matter of days" when one of the prescriptions ran out.  [doc. #136, p. 3].  Assuming this is true, it does not establish deliberate indifference; there is no evidence that Hedgemon had the requisite culpable intent.  *See Gobert*, 463 F.3d at 352.  And while a lapse in medication might constitute negligence, it does not, on these

---

[10]  Jason's medical records establish that he was prescribed Clonidine 0.1 mg (used to treat high blood pressure); Remeron 45 mg (used to treat depression); Paxil 40 mg (used to treat depression); and Ibuprogen 600 mg (an anti-inflammatory).

facts, constitute deliberate indifference. *See Gobert*, 463 F.3d at 352 (no deliberate indifference for one week lapse in antibiotic treatment); *Estate of Henson v. Krajca*, 440 F. App'x 341, 345 (5th Cir. 2011) (deliberate indifference exists wholly independent of an optimal standard of care); *Junkert v. LaSalle*, No. 3:21-cv-0446, 2022 WL 2111109, at *2 (N.D. Tex. May 12, 2022) (No deliberate indifference where inmate's medications ran out absent misconduct).

Jason also contends that Hedgemon ignored his complaints that his PTSD medication was causing him side effects. [doc. #56, pp. 6–8]. In his affidavit, Jason states: "[I] made several medical 'sick-call' requests seeking psychiatric care while explaining I was experiencing complications with my PTSD ailment, as well as psychotropic mediations all to no avail." [doc. #143-1, p. 4].

Upon review of Jason's kiosk history[11] (containing both his administrative remedy procedure filings and grievances), Jason fails to establish that Hedgemon was "aware of facts from

---

[11] In his initial complaint, Jason alleges that he lodged additional grievances and ARPs that were "deleted from [the] prison kiosk system." [doc. #1, Exh. A]. However, while a plaintiff's verified complaint can be considered as summary judgment evidence to the extent that it comports with the requirements of Federal Rule of Civil Procedure (56)(e), *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994), here, Jason's complaint was not verified as true and correct under penalty of perjury, and, therefore, is unverified and does not constitute competent summary judgment evidence. *See id.* (finding that plaintiff's second amended complaint was not verified and, therefore, was not competent summary judgment evidence); *see also Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 334 (5th Cir. 2020) ("[A] court may not rely on mere factual allegations in an unverified complaint to make summary-judgment rulings."). Therefore, the Court will not credit Jason's unsworn assertion that Riverbend officials deleted his grievances and ARPs from the kiosk. However, even if Jason's unsworn allegation that ARPs were deleted from the prison kiosk could be presented in admissible form, *see Lozano v. Davis*, 774 F. App'x 263, 264 (5th Cir. 2019), he does not allege who deleted the ARPs, when they were deleted, or why they were deleted. Accordingly, Jason's conclusory allegation is insufficient to raise a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 49–50 (1986) (if evidence rebutting motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted).

15

which the inference could be drawn that a substantial risk of serious harm exists," and that he actually "dr[ew] the inference." *Farmer*, 511 U.S. at 837.

Jason's May 18, 2021, grievance, directed towards Hedgemon, alleges that his medications "ha[d] not been refilled for over a week." [doc. #83-1, p. 5]. Jason writes "I am experiencing psychological issues which only makes this matter wor[se]. I am not experiencing suicidal thoughts nor have any intention of hurting no one [sic]." *Id.* Jason's May 27, 2021, grievance alleges deprivation of adequate medical care in violation of his constitutional rights because Riverbend lacks a mental health department or psychologist. [doc. #83-1, p. 7]. Jason requests transfer and $200,000 in damages. *Id.* In his June 2, 2021, transfer request, directed towards Hedgemon and Sheriff Williams, Jason writes "I am experiencing complications with my PTSD ailment and is in [sic] dire need of seeing a certified licensed psychiatrist either for change of medication and/or counseling." [doc. #83-1, p. 16]. In his June 30, 2021, grievance, Jason alleges that he did not receive his nighttime medication. [doc. #26-1, p. 20]. On July 1, 2021, responding officer Deshun Frost wrote that the grievance is unfounded as "Nurse Wingate advised me that you've not been taken off your p.m. meds." *Id.*

Even assuming that Hedgemon was personally aware of Jason's kiosk requests, the messages lack any specificity to place Hedgemon on notice that Jason was at risk of *serious* harm. "Serious harm isn't just any harm." *Rogers v. Jarrett*, No. 21-20200, 2023 WL 2706752, at *2 (5th Cir. 2023). The serious medical need must be "so apparent that even laymen would recognize that care is required." *Id.* This is not to say that lack of psychological treatment cannot cause "serious harm." Fifth Circuit case law is clear that it can. *See Partridge*, 791 F.2d at 1187 ("[A] serious medical need may exist for psychological or psychiatric treatment, just as it may exist for physical ills."). In this case, however, it is apparent that Jason received medication for his

16

psychological conditions, and that he unequivocally communicated that he was not suicidal or a risk to harm others.  To the extent that Jason suffered complications with his medications, he did not specifically identify the symptoms or side effects.  Consequently, it cannot be said that Hedgemon was on notice as to a serious risk to Jason's health and failed to act.  *See Rogers*, 2023 WL 2706752, at *3 (no deliberate indifference where jury could not conclude that defendants actually inferred inmate was at substantial risk of serious harm); *Cope v. Cogdill*, 3 F.4th 198, 210–211 (5th Cir. 2021) (no deliberate indifference where there was no evidence that officers were aware of inmate's previous suicide attempt).

Finally,[12] in his July 24, 2021, grievance, Jason recounts the July 20, 2021, incident where he "blacked out" as follows:

> I became dizzy and blacked out falling to the concrete floor and striking my head onto floor causing cut over my right eye and swelling of the face needing medical attention.  I am experiencing complication from medication for PTSD and on several other occasions I blacked out falling to concrete floor as witnessed by LT or Capt. Red on nightshift.  I spoke with [Hedgemon] immediately after incident and relayed to him my medical problems as well as needs. For I have not seen a licensed psychiatrist or psychologist since being transferred to [Riverbend] in six months who can evaluate and diagnose my condition prescribing appropriate medication.  I ask Warden Hedgemon for medical transfer, and he stated he would have the prison doctor see me.  Still to the writing I have not seen the prison doctor. Because there is no licensed psychiatrist nor psychologist or mental health department at this jail facility to meet my needs I continue to make request for medical transfer . . . .

[doc. #26-1; p. 18].

Importantly, the parties do not dispute that Jason received medical treatment immediately after he blacked out.  [doc. #143-2, p. 4].  Medical staff evaluated Jason and referred him to the emergency room, but he refused to go.  *Id.*  Jason says he refused to go to the emergency room

---

[12] There are two additional grievances in the record: one filed on August 23, 2021, related to a dispute over transfer to a court hearing, and one filed November 9, 2021, related to prison mail. [doc. #83-1].  Neither appears relevant to the instant suit.

because Nurse Lena Middlebrook examined his cut and "opined there was no need for a trip to the emergency room." *Id.* Nonetheless, there is no evidence that Hedgemon was personally involved in Jason's medical treatment immediately following the black out. And even if there was such evidence, Jason does not contest that the Riverbend staff treated his injuries.

Further, it appears undisputed that Jason met with Hedgemon on July 20, 2021, after he was treated for injuries sustained when he blacked out. [doc. #20]. Accepting Jason's facts, he asked Hedgemon for medical transfer, Hedgemon told him he would refer him to the prison doctor, but then failed to do so. [doc. #26, p. 18]. Once again, Hedgemon's conduct does not rise to the level of deliberate indifference. Assuming, as Jason appears to allege, that he met with Hedgemon *after* he was treated at medical, Hedgemon had no reason to believe there was a serious risk to Jason's health—he had just been treated by medical staff and declined a referral to the hospital. As such, failing to transfer Jason would not evince a "wanton disregard" for his serious medical needs.[13] And even if Hedgemon met with Jason immediately after he blacked out and *before* he was treated, Hedgemon referred him to medical staff for treatment thereafter. Regardless of the sequence of events, it is uncontested that Riverbend medical staff treated Jason and referred him to the hospital. He refused to go.[14] Thus, no reasonable jury could conclude on this record that Hedgemon inferred that Jason was at substantial risk of serious harm and chose not to act. *See Broussard v. Nelson*, 503 F. App'x 259, 260 (5th Cir. 2012) (plaintiff's bare assertion that defendant delayed in responding to an emergency call and failed to provide prescribed medicine did not clearly evince a wanton disregard for plaintiff's medical needs); *Morgan v. Tex. Dep't of*

---

[13] As discussed above, transfer decisions lie solely within the purview of the D.O.C.

[14] The undersigned observes that, had Jason accepted the hospital referral, he could have sought and opinion and treatment from a physician at the hospital as to any side effects from his medicine and for his PTSD.

*Crim. Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013) ("While prescribing incorrect treatments that cause side effects might amount to malpractice, this allegation, without a further showing of deliberate indifference to serious medical needs, does not rise to the level of a constitutional violation.").

In sum, Jason's contentions that Hedgemon "ignored and disregarded" his requests for adequate medical care are unsubstantiated. While the undersigned is sympathetic to Jason's plight, undisputed evidence shows that Jason received medical care at Riverbend. And, although it may not have been the care that Jason preferred, disagreement with the treatment does not give rise to a constitutional claim. *See Young*, 760 F. App'x at 257; *Whiting*, 255 F. App'x at 899. Therefore, there is no genuine issue of material fact and Hedgemon is entitled to summary judgment. Accordingly, Jason's deliberate indifference claim against him should be dismissed with prejudice.

### 2. Assistant Warden Russell

The summary judgment evidence as it relates to Assistant Warden Russell is nearly identical to that before the Court with respect to Hedgemon. Jason's only summary judgment evidence unique to Russell comes from his affidavit, where he avers that, at some unspecified time prior to July 20, 2021, "I spoke with Russell concerning "the non-treatment of my PTSD by psychotherapy and counseling, as well as the non-available mental health department at [Riverbend], in which I explained complication of side-effect from psychotropic medications." [doc. #143-1, pp. 4–5]. Jason also claims that "[Russell] acknowledged (verbally) that [Riverbend] lacked a mental health department and further stated that I should not be at [Riverbend], in which [sic] he wrote my name and identification number on a pad and stated that he will get with medical department. There was no further action taken by [Russell]." *Id.* at 5.

Once again, accepting Jason's facts, Russell's conduct does not rise to the level of deliberate indifference. Jason provides no evidence that Russell's failure to recommend his transfer to a different facility was motivated by ill intent. *See Mixon v. Pohlmann*, Civ. No. 20-1216, 2021 WL 6072501, at *14 (E.D. La. Dec. 23, 2021) (no deliberate indifference claim where plaintiff did not allege that doctors failure to recommend transfer was motivated by evil motive or intent). Furthermore, as discussed above, Jason was receiving medication for his PTSD—while he clearly believed that medical transfer was the appropriate course of treatment, disagreement with the treatment he received does not give rise to a constitutional claim.

Therefore, there is no genuine issue of material fact and Russell is entitled to summary judgment. Accordingly, Jason's deliberate indifference claim against him should be dismissed with prejudice.

### 3. *Sheriff Williams*

As with Russell, the summary judgment evidence as it relates to Sherriff Williams is nearly identical to that before the Court with respect to Hedgemon. Jason's only summary judgment evidence unique to Williams comes from his affidavit, where he claims that he made a "handwritten" request on the prison kiosk machine directed towards Sheriff Williams, as well as Hedgemon and Russell, "seeking psychiatric care and transfer to a DOC prison facility in order to receive psychiatric service [sic]." [doc. #143-1, p. 7]. Jason claims his request went unanswered. *Id.*

Jason fails to offer any summary judgment evidence that Williams had any personal knowledge of his medical issues or treatment. However, even assuming that Williams personally read Jason's grievance, Jason did not provide any specific details about his condition to place Williams on notice that Jason was at risk of serious harm.

Therefore, there is no genuine issue of material fact and Williams is entitled to summary judgment. Accordingly, Jason's deliberate indifference claim against him should be dismissed with prejudice.

### b. *Conditions of Confinement Claim*

The Eighth Amendment "does not mandate comfortable prisons, but neither does it permit inhumane ones." *Farmer*, 511 U.S. at 832. "The Constitution requires that inmates receive adequate food, clothing, shelter, medical care, and mental health care, and that detention facilities 'take reasonable measures to ensure the safety of the inmates.'" *Jones*, 296 F.R.D. at 430–31 (quoting *Gates*, 376 F.3d at 332).

As with Defendant Costello, there is substantial overlap between Jason's conditions of confinement claims and his medical care claims; an Eighth Amendment claim based on the conditions of an inmate's confinement requires a plaintiff to show conditions or policies that "pos[e] a substantial risk of serious harm" and that "defendant prison officials were deliberately indifferent to the inmate's health or safety." *Hinojosa*, 807 F.3d at 665 (quoting *Farmer*, 511 U.S. at 834) (internal quotation marks omitted). Given that a conditions of confinement claim requires a showing of deliberate indifference, and the Court has already found that the Law Enforcement Defendants were not deliberately indifferent to Jason's health or safety, the Law Enforcement Defendants are also entitled to summary judgment on Jason's conditions of confinement claims. *See Perez v. Harris County, Tex.*, 26 F.3d 1119 (5th Cir. 1994) (summary judgment appropriate where Plaintiff alleged constitutionally deficient policy for administering health care to inmates but failed to demonstrate he received constitutionally deficient medical treatment). As such, these claims should also be dismissed with prejudice.

### Conclusion

For the foregoing reasons,

**IT IS RECOMMENDED** that Defendant Carla Costello's motion for summary judgment [doc. #107], be **GRANTED** and all claims against her be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Defendants Johnny Hedgemon; Robert Russell; and Wydette Williams' motion for summary judgment [doc. #136], be **GRANTED** and all claims against them be **DISMISSED WITH PREJUDICE**.[15]

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, on this 21st day of April, 2023.

KAYLA DYE McCLUSKY
UNITED STATES MAGISTRATE JUDGE

---

[15] This resolves all claims against all remaining Defendants.